1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VICTOR WYATT; MARSHALL K.          )      2:06-cv-1003-GEB-DAD
     MCMURRAY; CHARLES MITCHELL;        )
12   EDGAR M. COLLINS; TERRANCE         )
     HALTIWANGER,                       )
13                                      )
                     Plaintiffs,        )
14                                      )
                 v.                     )      ORDER*
15                                      )
     COUNTY OF BUTTE and DEPUTY         )
16   PATRICK McNELIS,                   )
                                        )
17                   Defendants.        )
                                        )
18

19           Defendants move to dismiss Plaintiffs' Amended Complaint

20   ("Complaint") under Federal Rule of Civil Procedure 12(b)(6).

21   Plaintiffs oppose the motion.  For the following reasons, Defendants'

22   motion will be granted in part and denied in part.

23   ///

24   ///

25   ///

26   ///

27   _____

28           *    This case was determined to be suitable for decision without
     oral argument.  L.R. 78-230(h).

                                    1

<u>BACKGROUND</u>

Plaintiffs are Victor Wyatt ("Wyatt"), Marshall K. McMurray ("McMurray"), Charles Mitchell ("Mitchell"), Edgar M. Collins ("Collins") and Terrance Haltiwanger ("Haltiwanger") (collectively "Plaintiffs").  Defendants are the County of Butte ("County") and Deputy Patrick McNelis ("McNelis").  Plaintiffs were arrested in 2004 or 2005 and incarcerated in the Butte County Jail.  (Compl. ¶ 9.)

Plaintiffs assert the County committed various constitutional violations against them under 42 U.S.C. § 1983 during their pre-trial detention and criminal trial proceedings, including a denial of equal protection and due process under the Fourteenth Amendment, a violation of their right to counsel and speedy trial under the Sixth Amendment, a violation of their right to be free from cruel and unusual punishment and to be free from excessive bail under the Eighth Amendment and a violation of their right to due process under the Fifth Amendment.  (<u>Id.</u> ¶¶ 10-38.)  Plaintiffs also allege Defendants applied duress to harass or obtain a guilty plea; deprived Plaintiffs of the right to a fair trial; systematically and unreasonably deprived Plaintiffs of medical treatment during incarceration; opened legal mail and withheld Plaintiffs' other mail in line with jail practice; limited their access to the jail library and legal services (identified in the Complaint as "CLC"), also in accord with jail practice; eavesdropped on confidential counsel visits; and conspired with others to deprive Plaintiffs of their civil rights.  (<u>Id.</u> ¶¶ 17, 24, 25, 26, 33, 36.)

Plaintiffs also allege in a vague and conclusory manner that the County is liable for "its failure to supervise and train jail personnel to be cognizant and respectful of the civil rights of jail

detainees and to handle recurring situations which present an obvious
potential for constitutional violation in a fair and non-
discriminatory manner." (Id. ¶ 37.)  Furthermore, Plaintiffs assert
it was "jail policy and practice . . . to disregard [civil] rights or
unevenly apply them to African American inmates." (Id.)

Collins asserts against McNelis a § 1983 Fourth Amendment
excessive force claim and an intentional infliction of emotional
distress ("IIED") claim.[1] (Id. ¶ 15.)  Plaintiffs McMurray, Mitchell,
Collins and Haltiwanger allege claims against the County under the
Americans with Disabilities Act ("ADA"). (Id. ¶¶ 39-45.)

DISCUSSION

Dismissal is appropriate under Rule 12(b)(6) if Plaintiffs
failed to (1) present a cognizable legal theory, or (2) plead
sufficient facts to support a cognizable legal theory. Robertson v.
Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).
When considering a motion to dismiss, all material allegations in the
Complaint must be accepted as true and construed in the light most
favorable to Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974);
Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).
In addition, Plaintiffs are given the benefit of every reasonable
inference that can be drawn from the allegations in their Complaint.
Retail Clerks Int'l Ass'n v. Schermorhorn, 373 U.S. 746, 753 n.6 (1963).
Accordingly, a motion to dismiss must be denied "unless it appears
beyond doubt that [Plaintiffs] can prove no set of facts in support of

---

[1]    While the Complaint appears to assert an IIED claim against
the County (see Compl. ¶ 46-52), Plaintiffs state in their Opposition
that "[t]he only IIED claim is Collins versus McNelis as an
individual." (Pls.' Opp'n at 9.)

1 [their] claim which would entitle [them] to relief." <u>Conley v.</u>
2 <u>Gibson</u>, 355 U.S. 41, 45-46 (1957).
3 <u>I. Failure to Exhaust Administrative Remedies</u>

4          Defendants argue Plaintiffs' claims are barred because they
5 failed to exhaust administrative remedies.  Defendants contend
6 "Plaintiffs do not allege that they have complied with the Prison
7 Litigation Reform Act, 42 USC § 1997e, ("PRLA") which requires
8 exhaustion of jail administrative procedures prior to filing a Section
9 1983 claim."  (Defs.' Mot. at 6.)  Defendants also assert that
10 although Plaintiffs acknowledge the Butte County Jail offers a limited
11 avenue of redress, "[Plaintiffs] do not allege that they have
12 exhausted either the jail's grievance procedures or the [State's]
13 Consent Decree's procedures to assert violations which occurred in
14 jail."  (<u>Id.</u>)

15           "Section 1997e(a) creates a defense - defendants have the
16 burden of . . . proving the absence of exhaustion." <u>Wyatt v. Terhune</u>,
17 315 F.3d 1108, 1119 (9th Cir. 2003).  However, Defendants have not
18 proved that Plaintiffs failed to exhaust administrative remedies.  <u>See</u>
19 <u>id.</u> at 1220 (explaining that defendants must produce adequate
20 documentary evidence when attempting to establish that administrative
21 remedies have been exhausted).  Further, Defendants' conclusory
22 argument about a consent decree's procedures is insufficient to
23 support their motion.  Accordingly, "Defendants have failed to meet
24 their burden of establishing that [Plaintiffs] did not exhaust
25 administrative remedies." <u>Id.</u>
26 <u>II. County liability under Section 1983</u>

27          Defendants assert that Plaintiffs fail to state a claim
28 against the County under § 1983.  (Defs.' Mot. at 2.)  To state a

claim of municipal liability under § 1983, a plaintiff must allege
that "his injuries were inflicted pursuant to an official county
policy or custom." <u>Thompson v. City of Los Angeles</u>, 885 F.2d 1439,
1444 (9th Cir. 1989) (citing <u>Monell v. Department of Soc. Servs.</u>, 436
U.S. 658, 690-94 (1978)).  As a general rule, "a single incident of
unconstitutional activity is not sufficient to impose liability under
<u>Monell</u>, unless proof of the incident includes proof that it was caused
by an existing, unconstitutional municipal policy, which policy can be
attributed to a municipal policymaker." <u>City of Oklahoma City v.</u>
<u>Tuttle</u>, 471 U.S. 808, 823-24 (1985).  "[A] claim of municipal
liability under section 1983 is sufficient to withstand a motion to
dismiss 'even if the claim is based on nothing more than a bare
allegation that the individual officers' conduct conformed to official
policy, custom, or practice.'" <u>Karim-Panahi v. Los Angeles Police</u>
<u>Dept.</u>, 839 F.2d 621, 624 (9th Cir. 1988) (citing <u>Shah v. County of Los</u>
<u>Angeles</u>, 797 F.2d 743, 747 (9th Cir. 1986).  Nevertheless, Plaintiffs'
claims about the manner in which guards handled their mail, interfered
with their access to the library and CLC legal services and
eavesdropped on confidential counsel visits, fail to state sufficient
facts to allege § 1983 claims against the County.

The bare allegation that guards opened Plaintiffs' legal
mail and withheld other mail is insufficient to state a constitutional
violation.  Furthermore, a prisoner is required to allege that the
asserted limitation to "the library or [to the CLC] legal [services]
hindered his efforts to pursue a legal claim" since "inmates do not
have 'an abstract, freestanding right to a law library or legal
[services].'" <u>Diaz v. Turner</u>, 2004 WL 2165374, at *3 (N.D. Tex.
Sept. 23, 2004) (internal citations omitted).  Therefore, Plaintiffs'

allegations concerning their limited access to the jail library and
"CLC" legal services do not state a claim.  Finally, the assertion
that Defendants eavesdropped on confidential counsel visits fails to
state a claim because the allegation "that a party monitored the
accused's conversations with his attorney does not necessarily
establish a Sixth Amendment violation.  Rather, the accused must
[allege], in addition, that the substance of the overheard
conversation was of some benefit to enforcement officials.  Absent
this [assertion], a monitoring allegation must be denied." Mastrian
v. McManus, 554 F.2d 813, 821 (8th Cir. 1977); see also United States
v. Hernandez, 937 F.2d 1490, 1493 (9th Cir. 1991) ("[T]he Supreme
Court has twice held that government invasion of [the attorney-client
privilege] . . . is not sufficient by itself to cause a Sixth
Amendment violation.  The defendant must have been prejudiced by some
actions.  Our circuit has also explicitly held that prejudice is
required.").  Since Plaintiffs have not alleged how they have been
prejudiced as a result of the eavesdropping of confidential counsel
visits, they have not stated a constitutional violation.

        Plaintiffs have also made other conclusory allegations which
are insufficient to state a Monell claim.  These include allegations
that physical abuse of African Americans during their arrest is a
common occurrence in the County of Butte (Compl. ¶ 5); that Wyatt was
the victim of excessive force by C.O. McBride, an individual who is
not a party to this case (id. ¶ 37); the failure to supervise and
train jail personnel to be aware of jail detainees' civil rights
(id.); that it was jail policy and practice to disregard, or unevenly
apply to African Americans, a state consent decree concerning rights
deriving from custody (id.); and that evidence was mishandled or

planted in Collins' and McMurray's cases (id. ¶ 25).  In addition,
Plaintiffs also allege that the County conspired with "prosecutors,
defense attorneys, independent contractors, investigators and judicial
officials to deprive plaintiffs of their civil rights in ways not
fully revealed or discovered to date."  (Id. ¶ 36.)  These allegations
are either so vague that it is not possible to ascertain what the
claimed wrong is or they are only allegations of a single incident of
a constitutional wrong that fails to specify that it was "caused by an
existing, unconstitutional municipal policy, which policy can be
attributed to a municipal policymaker."  City of Oklahoma City, 471
U.S. at 823-24.

Nor do Plaintiffs' allegations concerning public defenders,
the district attorney and state judges state a claim against the
County under Monell, because liability only attaches if the actor
responsible for the alleged actions is a county actor.  See Brewster
v. Shasta County, 275 F.3d 803, 805 (9th Cir. 2001) ("The question is
whether [the actor] is a policymaker on behalf of the state or the
county; if he is a policymaker for the state, then the county cannot
be liable for his actions.").  Plaintiffs' allegations concerning
public defenders are not attributable to the County since the
referenced public defenders were not acting on behalf of the County
when they performed "a lawyer's traditional function[] as counsel to a
defendant in a criminal proceeding."  Polk County v. Dodson, 454 U.S.
312, 325 (1981).  Nor are Plaintiffs' allegations concerning the
district attorney attributable to the County.[2]  In California, a
district attorney acts as a state official when involved with criminal

_____

[2]   This includes Plaintiffs' excessive bail allegations which
are insufficient to allege a Monell claim against the County.

7

1  proceedings in state court.  See Galbraith v. County of Santa Clara,
2  2006 WL 954182, at *3 (N.D. Cal. April 12, 2006) (indicating that a
3  district attorney was a state actor when filing charges against and
4  criminally prosecuting the plaintiff) (citing Weiner v. San Diego
5  County, 210 F.3d 1025, 1028 (9th Cir. 2000)).  Finally, the state
6  judicial officers referenced in the Complaint are also state actors.
7  Petty v. Petty, 2003 WL 21262369, at *4 (N.D. Cal. May 28, 2003)
8  (stating "judges are . . . state actors, and thus plaintiff may not
9  maintain a claim against the County for the judges' actions").

10         Plaintiffs' allegations that they were deprived of necessary
11 medical treatment in the jail also fail to state claims against the
12 County. (See Compl. ¶ 26 (asserting Plaintiffs were "systematically
13 and unreasonably deprived of necessary medical treatment" and "were
14 denied access to and the delivery of necessary medical care").)  "In
15 order to state a cognizable claim [of medical mistreatment], a
16 prisoner must allege acts or omissions sufficiently harmful to
17 evidence deliberate indifference to serious medical needs." Estelle
18 v. Gamble, 429 U.S. 97, 106 (1976).  Deliberate indifference is only
19 evidenced when "the official knows of and disregards an excessive risk
20 to inmate health or safety; the official must be both aware of the
21 facts from which the inference could be drawn that a substantial risk
22 of serious harm exists, and he must also draw the inference." Clement
23 v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Farmer v.
24 Brennan, 511 U.S. 825, 837 (1994)).  Furthermore, "mere negligence is
25 insufficient for liability."  Id.  Plaintiffs have failed to allege
26 sufficient facts to show the County acted with deliberate
27 indifference.
28 /////

1  　　　　Collins acknowledges he was taken to the hospital and seen

2  in the emergency room for treatment of injuries that allegedly

3  resulted from an altercation with an officer.  Collins asserts,

4  however, that when he was taken to the jail, "he received inadequate

5  pain medication, little care for his medical condition and no

6  treatment for his emotional distress following a brutal attack upon

7  him by arresting officers."  (Compl. ¶ 27.)  Although these

8  allegations may amount to a showing of negligence by the jailors, they

9  do not show that the jailors were deliberately indifferent.  On the

10 contrary, the Complaint explicitly states that Collins received some

11 medication and care for his medical condition.  (Id.)

12 　　　　McMurray concedes he "was provided little pain relieving

13 medicine" but alleges he was not provided physical therapy, and his

14 treatment for abscesses was either delayed or not received.  (Id.

15 ¶ 31.)  These allegations are insufficient to show the County acted

16 with deliberate indifference.  In addition, McMurray's claim that his

17 repeated requests for "surgical relief" were denied does not amount to

18 a showing of deliberate indifference because this allegation does not

19 show that the jailors knew, yet disregarded, an excessive risk to

20 McMurray's health.  (Id.)  Finally, the allegation that McMurray "was

21 unable to receive a healthy diet in strict conformance with [the]

22 requirements [of a practicing vegetarian]" does not amount to a

23 showing of deliberate indifference.  (Id. ¶ 26.)

24 　　　　Mitchell alleges he had a heart condition and that "[h]is

25 jailors failed to take him for an evaluation, failed to comply with

26 his outside physician's monitoring prescriptions, and ignored urgent

27 requests for treatment in a manner which could have been fatal."

28 (Id.)  Mitchell also states he did not receive "appropriate care for

his heart condition"; however, he concedes he was taken to the
hospital on two separate occasions. (Id. ¶ 32.) These allegations do
not show that the jailors were made sufficiently aware of the severity
of Mitchell's heart condition and yet chose to disregard Mitchell's
requests for treatment.

Wyatt and Haltiwanger allege "claims arising from their
mental health issues." (Id. ¶ 35.) "Wyatt alleges that his capacity
was questioned and he was required to wait many months before he went
to [Napa State Hospital]. Soon after his arrival it was clear he was
competent to stand trial and he was returned to jail and soon
thereafter released." (Id.) These allegations fail to meet the
deliberate indifference standard.

Haltiwanger alleges he "was deprived of his prescription
medication upon his arrest." (Id.) However, he also asserts that
"[e]ventually [his] bipolar aspect was satisfactorily regulated by
Lithium." (Id.) These allegations indicate that Haltiwanger's mental
illness was treated subsequent to his arrest. These allegations do
not allege a claim under the deliberate indifference standard.
Accordingly, Plaintiffs' medical treatment claims are dismissed.

III. ADA Claims

Defendants argue Plaintiffs' claims under the ADA should be
dismissed since Plaintiffs "do not adequately allege an ADA" "cause of
action." (Defs.' Mot. at 6.) Plaintiffs counter that their ADA
claims are based on a lack of accommodation for their disabilities and
lack of access to community treatment programs in the area of mental
health. (Pls.' Opp'n at 11.) Title II of the ADA prescribes: "[N]o
qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity,
or be subjected to discrimination by any such entity."  42 U.S.C.
§ 12132 (emphasis added).  The Supreme Court has held that "[s]tate
prisons fall squarely within the statutory definition of 'public
entity,'" and thus the provisions of the ADA apply.  <u>Pennsylvania</u>
<u>Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 210 (1998).  Accordingly,
"programs or services provided at jails, prisons, and any other
'custodial or correctional institution'" come within the scope of the
ADA.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 691 (9th Cir. 2001).
However, none of these Plaintiffs "allege that he was denied
[accommodation or access] <u>because of</u> his disability."  <u>Mark v. Imberg</u>,
2005 WL 1587797, at *10 (W.D. Wis. July 6, 2005).  Accordingly, these
ADA claims are dismissed.

<u>IV. Excessive Force Claim against McNelis</u>

        McNelis also moves for dismissal of Collins' § 1983
excessive force claim.  (Defs.' Mot at 5.)  Collins alleges that at
the time of his arrest, McNelis used excessive force "in applying a
taser in multiple places" and the "tasering continued after Collins
was handcuffed and in custody."  (Compl. ¶ 29.)  McNelis responds that
"no facts are [pled] to support an inference that [his] use of non-
lethal force was unreasonable."  (Defs.' Mot. at 5.)

        This claim is "analyzed under the Fourth Amendment and its
'reasonableness' standard."  <u>Forrester v. City of San Diego</u>, 25 F.3d
804, 806 (9th Cir. 1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395
(1989)).  It is obvious that Collins has pled sufficient facts to
state an excessive force claim against McNelis.  Therefore, the motion
to dismiss Collins' excessive force claim is denied.

/////

1

<u>CONCLUSION</u>

2      For the stated reasons, Defendants' motion is granted in

3 part and denied in part.  Plaintiffs are granted leave to file a

4 Second Amended Complaint, in which they are authorized to cure the

5 deficiencies of the dismissed claims, provided that the Second Amended

6 Complaint is filed and served within ten days of the date on which

7 this Order is filed.

8      IT IS SO ORDERED.

9 DATED: November 22, 2006

10

11                         GARLAND E. BURRELL, JR.
                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28