IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTOR WYATT; MARSHALL K. MCMURRAY; CHARLES MITCHELL; EDGAR M. COLLINS; TERRANCE HALTIWANGER; | ) ) ) ) ) | 2:06-cv-1003-GEB-DAD |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER* |
| COUNTY OF BUTTE; DEPUTY PATRICK McNELIS; | ) ) ) | |
| Defendants. | ) ) | |

Defendants move for partial dismissal of Plaintiffs' Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs oppose the motion.

BACKGROUND

Plaintiffs are Victor Wyatt ("Wyatt"), Marshall K. McMurray ("McMurray"), Charles Mitchell ("Mitchell"), Edgar M. Collins ("Collins"), and Terrance Haltiwanger ("Haltiwanger") (collectively "Plaintiffs").  Defendants are the County of Butte ("County") and

---

*        This case was determined to be suitable for decision without oral argument.  L.R. 78-230(h).

1  Deputy Patrick McNelis ("McNelis").  Plaintiffs were arrested in 2004
2  or 2005 and incarcerated in the Butte County Jail.  (SAC ¶ 9).

3          Plaintiffs allege that Defendants committed various
4  constitutional violations against them under 42 U.S.C. § 1983
5  "pursuant to an official county policy of racial discrimination in
6  making arrests and holding detainees while depriving them of their
7  rights." (Id. ¶ 10.)  Plaintiffs allege that "[t]he deprivations and
8  unequal treatment at the jail were the result of a long term (more
9  than ten years) custom and practice promulgated by the then incumbent
10 jail commanders and the Butte County Sheriffs and carried out by
11 County employees." (Id.)  Specifically, Plaintiffs allege claims for
12 denial of equal protection under the Fourteenth Amendment, denial of
13 due process under the Fifth Amendment, violation of the Sixth
14 Amendment right to counsel and speedy trial, and violation of Eighth
15 Amendment rights to be free from cruel and unusual punishment and
16 excessive bail. (Id. ¶¶ 10-49.)  Plaintiffs also allege Defendants
17 applied duress to harass or obtain guilty pleas; deprived Plaintiffs
18 of the right to a fair trial because of, inter alia, the systematic
19 under-representation of minorities in the jury pool; systematically
20 and unreasonably deprived Plaintiffs of medical treatment during
21 incarceration; opened Plaintiffs' legal mail and withheld Plaintiffs'
22 other mail; limited their access to the jail library and legal
23 services (identified in the SAC as "CLC"); eavesdropped on
24 confidential counsel visits; denied Plaintiffs' access to appropriate
25 investigative services; and mishandled and planted drug evidence on
26 Collins and McMurray "as part of a pattern and practice of the
27 police." (Id. ¶¶ 17, 24, 27-28, 40-43, 37, 38, 25, 18, 26.)
28

Plaintiffs also allege a violation of the Americans with Disabilities Act ("ADA"). (<u>Id.</u> ¶¶ 50-61.) Specifically, Plaintiffs allege that they "are individuals with serious injuries and disabilities, both mental and physical"; "[t]hey were entitled to reasonable accommodation and access as inmates in the Butte County jail"; and "[e]ach of them was denied such accommodation and/or access because of his disability while incarcerated as well as denied access to programs or services outside the jail which could have been provided with reasonable accommodation." (<u>Id.</u> ¶ 51.)

Further, Collins asserts an intentional infliction of emotional distress ("IIED") claim against McNelis, alleging that McNelis caused him "severe emotional distress by inflicting on him brutal treatment and a wrongful arrest and making false allegations against him." (<u>Id.</u> ¶ 64.)

<u>DISCUSSION</u>

Dismissal is appropriate under Rule 12(b)(6) if Plaintiffs failed to (1) present a cognizable legal theory, or (2) plead sufficient facts to support a cognizable legal theory. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984). When considering a motion to dismiss, all material allegations in the Complaint must be accepted as true and construed in the light most favorable to Plaintiffs. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996). In addition, Plaintiffs are given the benefit of every reasonable inference that can be drawn from the allegations in their Complaint. <u>Retail Clerks Int'l Ass'n v. Shermahorn</u>, 373 U.S. 746, 753 n.6 (1963). Accordingly, a motion to dismiss must be denied "unless it appears beyond doubt that [Plaintiffs] can prove no set of facts in support of

[their] claim which would entitle [them] to relief."  <u>Conley v.</u>
<u>Gibson</u>, 355 U.S. 41, 45-46 (1957).

<u>I. Section 1983 Claims</u>

### A. Claims Based on the Conduct of Non-County Actors

Defendants argue that pursuant to the Court's Order filed
November 22, 2006 ("November 22 Order"), "claims against the County
for the actions of public defenders[,] the District Attorney's
decisions regarding the prosecution of the plaintiffs[, and] for the
actions of state court judges," should be dismissed.  (Mot. at 4:7-8,
12-13, 17-18.)  Plaintiffs respond that "[t]hey are not presenting any
claim against any or all public defenders"; that they "present no
claims against the District Attorneys as an office or as individuals";
and that they "are not bringing suit against the County for the
actions of 'state court judges.'"  (Opp'n at 3:8, 19, 4:6.)

The November 22 Order granted Defendants' previous motion to
dismiss allegations in Plaintiffs' first amended complaint that
alleged the County was liable under <u>Monell v. Dept. of Soc. Servs.</u>,
436 U.S. 658, 690-94 (1978) for the actions of "public defenders, the
district attorney and state judges."  (Nov. 22 Order at 7:12-14.)
Plaintiffs again allege that the County is liable for the conduct of
public defenders, district attorneys, and state court judges in
paragraphs 11 through 14, 20, 22, 23, 26, 30, 35, 44, 45 of the SAC.
Thus the issue is whether these allegations should be dismissed
without leave to amend.  "When evaluating whether to grant leave to
amend, the Court considers whether the amendment . . . [would be]
futile."  <u>Sentry Ins. v. Heidelberg USA, Inc.</u>, 2006 WL 2827238, at *1
(D. Ariz. Oct. 2, 2006) (internal citation omitted).  Since the County
is not liable under <u>Monell</u> for the actions of non-County actors, "the

1   underlying facts or circumstances relied upon by a plaintiff [are not
2   the] proper subject of relief" and amendment would be futile.  <u>Foman</u>
3   <u>v. Davis</u>, 371 U.S. 178, 182 (1962).  Therefore, these allegations are
4   dismissed without leave to amend.

5        Defendants also seek dismissal of "claims against the County
6   for excessive bail" arguing that the November 22 Order prohibits such
7   claims.  (Mot. at 4:20-22.)  Plaintiffs counter that "[t]he claim is
8   not for excessive bail per se but for allowing race to be a factor
9   when setting the bail policies in effect in the County of Butte."
10  (Opp'n at 4:15-18.)  Defendants rejoin that under California Penal
11  Code section 1269(b) and (c) no County actors are involved with
12  setting bail schedules and therefore Plaintiffs' allegation "that the
13  bail schedule is applied unequally against minority defendants . . .
14  should be addressed to the Superior Court and not the County."  (Reply
15  at 3:19, 22, 26-28.)

16       The SAC does not contain allegations showing the County is
17  responsible for setting bail.  (<u>see</u> Cal. Penal Code § 1269(b), (c)
18  ("[i]f a defendant has appeared before a judge of the court on the
19  charge . . . , the bail shall be in the amount fixed by the *judge*.  If
20  that appearance has not been made, the bail shall be in the amount
21  fixed in the warrant of arrest or, if no warrant of arrest has been
22  issued, the amount of bail shall be pursuant to the uniform countywide
23  schedule of bail for the county . . . .  It is the duty of the
24  *superior court judges* in each county to prepare, adopt, and annually
25  revise a uniform countywide schedule of bail.") (emphasis added).
26  Accordingly, Plaintiffs' claims of excessive bail and/or unequal
27  application of the bail schedule against minority defendants alleged
28

1  in paragraphs 15, 16, 17, and 23 of the SAC are dismissed with leave
2  to amend.

3                   B. Inadequate Library Access Claims

4          Defendants argue that Plaintiffs' "claim for inadequate
5  library access should be dismissed" because the November 22 Order
6  prohibited such claims unless Plaintiffs could allege that such a
7  prohibition hindered their efforts to pursue a legal claim.  (Mot. at
8  5:1-2, 4:23-24.)  Defendants further contend that the SAC "alleges as
9  evidence of hindrance the fact that both [] Collins and [] Haltiwanger
10 filed a writ of habeas corpus" and "[a]lthough Collin's writ was
11 returned for failing to pay a fee or provide a fee waiver application,
12 the ability to file writs evidences access to a legal library, not the
13 lack of such access."  (Mot. at 4:26-28, 5:1.)  Plaintiffs respond
14 that "[t]he fact [that] two plaintiffs filed a writ of habeas corpus
15 does not prove they had access to the library [since] [t]hose writs
16 could have been drafted in a number of ways utilizing jail house
17 lawyers and other methods."  (Opp'n at 5:7-9.)  Defendants rejoin that
18 "[P]laintiffs' have not alleged sufficient facts to state a claim
19 because there have been no allegations that they were unable to file
20 legal claims with the Court."  (Reply at 4:20-21).

21         "[P]rison law libraries and legal assistance programs are
22 not ends in the themselves, but only the means for ensuring [access to
23 the courts]."  Lewis v. Casey, 518 U.S. 343, 352 (1996).  Accordingly,
24 "a prisoner is required to allege that the asserted limitation to 'the
25 library or [to the CLC] legal [services] hindered his efforts to
26 pursue a legal claim' since 'inmates do not have 'an abstract,
27 freestanding right to a law library or legal [services].'"  (Nov. 22
28

Order at 5:23-17 (citing <u>Diaz v. Turner</u>, 2004 WL 2165374, at *3 (N.D. Tex. Sept. 23, 2004).)

Plaintiffs allege they "were severely limited in their access to federal courts where they were bringing writs." (SAC ¶ 37.) However, Plaintiffs further allege that "[b]oth Collins and Haltiwanger prepared and submitted writs of habeas corpus seeking to obtain their release." (<u>Id.</u>) "While notice pleading does not demand that a complaint expound facts, a plaintiff who does so is bound by such exposition." <u>Bender v. Suburban Hosp., Inc.</u>, 159 F.3d 186, 192 (4th Cir. 1989); <u>see Weisbuch v. County of Los Angeles</u>, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that by pleading particular facts that show Plaintiffs have no legal claim, "'plaintiff[s] may plead [themselves] out of court.'") (internal citation omitted). Accordingly, despite Plaintiffs' allegation that they were limited in their access to federal courts, the allegation that Collins and Haltiwanger filed habeas writs in federal court evidences access to the courts. (<u>See</u> SAC ¶ 37.) Further, even though Collins alleges that his "Writ" was returned because the applicable fee was not paid and he had not obtained "a fee waiver application," these allegations are insufficient to show that the referenced shortcomings resulted from Collins's inadequate access to the jail library or other legal services. (<u>Id.</u>)

Plaintiffs also allege that they "were in need of library access to obtain forms, read statutes and engage in meaningful legal research"; they were "hampered by having to hand write pleadings in pencil,"; and "were denied access to the [] resources of the Internet." (SAC ¶ 38.) These allegations do not show how Plaintiffs were "hindered in [their] efforts to pursue a legal claim." <u>Lewis</u>,

518 U.S. 343 (stating that plaintiffs may show hindrance in their efforts to pursue a legal claim by, "for example, [alleging that] a complaint [they] prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, [they] could not have known" or "that [they] suffered arguably actionable harm that [they] wished to bring before the courts, but w[ere] so stymied by inadequacies of the law library that [they were] unable even to file a complaint.") Accordingly, Plaintiffs' allegations concerning limitations to library access in paragraphs 37 and 38 of the SAC are dismissed with leave to amend.

### C. "Vague or Conclusory Claims"

#### 1. Denial of Investigative Services

Defendants argue the allegation that "Collins and Haltiwanger . . . did not have appropriate investigative services paid by the [C]ounty . . . is insufficiently alleged." (Mot. at 5:6-8.) Specifically, Defendants contend that "if [Plaintiffs] were represented by [a] public defender at the time, the claims should be made against the public defender," and "[i]f self-represented . . . Plaintiffs must have formally requested an investigator from the court." (Id. at 5:8-11.) Defendants argue that had Plaintiffs done so, "the [denial of investigative services] claim then would properly be brought against the court which is a state actor." (Id. 5:16-17.) Plaintiffs respond that both Collins and Haltiwanger were not self-represented, had "appointed public defenders at arraignment," and "were not refused such an appointment by the Court." (Opp'n at 5:13-15.) Plaintiffs further state that "[t]hey were not apprised of the potential for provision of [investigative] services by appointment"

and that "[i]f this information is not routinely imparted to African American defendants by Court or County policy; such discrimination is actionable." (<u>Id.</u> at 5:16-18.)

Defendants rejoin that since "Plaintiffs' claims regarding the denial of investigative services are properly directed against their public defenders, . . . the claims should be dismissed against the County." (Reply at 5:4-5.)  Further, Defendants argue that pursuant to California Penal Code section 987.2, "Plaintiffs or their public defenders must formally request an investigator of the Court in order to receive the assistance of an investigator"; Plaintiffs admit that they did not do so; and therefore "[t]he party with the legal responsibility of [notifying] the defendants, if any . . ., would be the plaintiffs' public defenders [who are not County actors]." (<u>Id.</u> at 5:7-13.)

A request for investigative services is made by "a motion for the appointment of an investigator at public expense . . . showing that the investigative services [were] reasonably necessary." <u>Puett v. Superior Court for the County of San Bernardino</u>, 96 Cal. App. 3d 939, 938-39 (1979); <u>see</u> <u>People v. Faxel</u>, 91 Cal. App. 3d 327, 329 (1979) (stating that a "self-represented defendant must make a showing at least equal to that which must be made by counsel seeking the same right [the appointment by the trial court of a state compensated investigator] for his indigent client."). Since Plaintiffs' claim in paragraph 18 of the SAC for lack of investigative services fails to allege a claim against the County, it is dismissed without leave to amend.

## 2. Drug Evidence

Defendants argue that "[a]llegations that Defendant somehow planted drugs on Collins and McMurray are conclusory and unsupported by evidence," or, alternatively, are only allegations of a single incident [of a constitutional wrong] as precluded by the November 22 Order.  (Mot. at 5:22-23, 20.)  Plaintiffs counter that "Defendants offer no support for their assertion [that] a single incident cannot support a [s]ection 1983 claim." (Opp'n at 5:21-22.)

The November 22 Order dismissed "allegations of a single incident of a constitutional wrong that fail[ed] to specify that it was 'caused by an existing, unconstitutional municipal policy . . . attributed to a municipal policymaker.'"  (Nov. 22 Order at 7:7-11, (citing <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)).)  "Collins and McMurray contend drug evidence was mishandled and planted by law enforcement as part of a pattern and practice of the police."  (SAC ¶ 26.)  These allegations are sufficient to withstand the County's motion since the claims are based on the allegation that "'individual officers' conduct conformed to official policy, custom, or practice.'"  <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 624 (9th Cir. 1988) (citing <u>Shah v. County of Los Angeles</u>, 797 F.2d 743, 747 (9th Cir. 1986)).

## 3. Duress

Defendants also argue that Plaintiffs' allegation "that they were subject to duress" should be dismissed "[b]ecause these claims are unduly vague as to who Plaintiffs' allege are the responsible actors."  (Mot. at 6:7, 11-12.)  Specifically, Defendants contend that "Plaintiffs allege wrongful prosecution" but that the district attorney is a state actor; "excessive bail [which is a] claim that

does not sound against [the] [C]ounty"; and "excessive pretrial
detention [where] no [C]ounty actor is alleged to have been
responsible for the detention."   Plaintiffs counter that "[e]xcept
when specified to be Deputy McNelis, the claims are all against the
County of Butte."   (Opp'n at 6:12-13.)

        Plaintiffs can only state a <u>Monell</u> claim against the County
"if the actor responsible for the alleged actions is a County actor."
(Nov. 22 Order at 7:14-15.)   Plaintiffs allege in the SAC that their
"civil rights were ignored by [the] County while various forms of
duress were applied to them to pressure them into making [] guilty
plea[s]."   (SAC ¶ 17.)   Plaintiffs allege that "[t]he duress took
several forms" assuming "the character of cruel and unusual punishment
. . . by the incarcerating officers"; that "[t]he lengthy pretrial
detention itself became a form of punishment"; and that Plaintiffs
"endured other types of duress . . . such as prosecution asserting
multiple unlikely charges, incarceration without attainable bail, and
excessive periods of pretrial detention."   (<u>Id.</u>)   Plaintiffs fail to
specify how the County is responsible for the allegations of duress
stated in the SAC.   (<u>Id.</u>)   Accordingly, Plaintiffs' allegations of
duress are dismissed with leave to amend.

                D. Medical Mistreatment Claims

        Defendants argue that "it appears that allegations
[concerning medical mistreatment at the jail] from the first amended
complaint have simply been repeated in the [SAC] [and] [t]herefore,
these allegations are prohibited [by] the [C]ourt's Order."   (Mot. at
7:1-3.)   Plaintiffs counter that "there is no need for each
[P]laintiff to describe in great detail every aspect of his medical
condition and the treatment omissions that have occurred" and that

1 "these claims should not be dismissed . . . because [P]laintiffs do

2 not yet possess all the facts which will become available during

3 discovery to prove what information the jail commander or any other

4 correctional officer had at what time and why he ignored it."  (Opp'n

5 at 6:23-24, 7:5-8.)

6          "[T]o state a cognizable claim [of medical mistreatment], a

7 prisoner must allege acts or omissions sufficiently harmful to

8 evidence deliberate indifference to serious medical needs."  Estella

9 v. Gamble, 429 U.S. 97, 106 (1979).  Deliberate indifference is only

10 evidenced when "the official knows of and disregards an excessive risk

11 to inmate health or safety; the official must be both aware of the

12 facts from which the inference could be drawn that a substantial risk

13 of serious harm exists, and he must also draw the inference."  Clement

14 v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Farmer v.

15 Brennan, 511 U.S. 825, 837 (1994)).  "[M]ere negligence is

16 insufficient for liability" under the deliberate indifference

17 principle.  Id.

18          Plaintiffs allege in the SAC that "Collins, Mitchell, [and]

19 McMurray contend they were deprived of medical care as part of a

20 policy of deliberate indifference to the medical needs of prisoners."

21 (SAC ¶ 40.)  Specifically, Plaintiffs allege that "Mitchell personally

22 and through his cardiologist made known to jail personnel his medical

23 monitoring and medication needs"; [t]he jail personnel failed to

24 assure he received his prescribed medication timely [and] failed to

25 provide him access to medical providers and unreasonably delayed

26 transporting him to the hospital, knowingly jeopardizing his life."

27 (Id. ¶ 41.)  Plaintiffs also allege that "McMurray repeatedly asked

28 for treatment and an opportunity for surgery [and] [h]is letter from

his treating orthopedist, indicating waiting too long could cause him
to pass the operable point, was ignored." (Id. ¶ 42.)  The SAC also
alleges that "Wyatt, Collins and Haltiwanger allege deliberate
indifference in regard to the lack of provision of treatment for
obvious mental health problems" and that "[j]ail officials were aware
of the mental health issues manifested by these [P]laintiffs." (Id.
¶ 43.)  These allegations indicate that jail personnel knew, and
disregarded, that a substantial risk of serious harm existed and are
thus sufficient to state a claim against the County for medical
mistreatment.[1]

### E. Handling of Mail and Eavesdropping on Counsel Visits

Defendants argue that "Plaintiffs have not adequately
alleged that they were prejudiced by alleged mail searches or
eavesdropping on counsel visits" because even though they "allege that
they suffered a 'chilling effect,'" this allegation is "unduly vague."
(Mot. at 7:12-15.)  Defendants also contend that "even if the inmates'
defense strategy was revealed, such revelation is no violation of the
[Sixth] Amendment where [Plaintiffs' ability to defend themselves was
not impaired]." (Id. at 7:16-18.)  Plaintiffs counter that
"monitoring incarcerated defendants when they communicate with their
counsel is prejudicial in its practice [because] [i]t prevents access
to and confidentiality with counsel and deprives the defendant of

---

[1]    However, allegations that "McMurray is a practicing
vegetarian, but he was unable to receive a healthy diet" and that
Collins "was seen briefly in the ER and then taken to the jail without
pain medication, further care for his medical condition and no
treatment for his emotional distress" do not state a claim for medical
mistreatment because Plaintiffs have not "allege[d] acts or omissions
sufficiently harmful to evidence deliberate indifference to serious
medical needs." (SAC ¶¶ 28, 30; Estelle, 429 U.S. at 106.)  These
allegations are dismissed with leave to amend.

1  effective counsel and violates the [Sixth] Amendment."  (Opp'n at 8:6-
2  8.)  Plaintiffs also argue that "[m]aking a direct showing of the harm
3  at this stage of the pleadings . . . is difficult; particularly when
4  the use made of what was overheard has not yet been revealed through
5  discovery."  (<u>Id.</u> at 9:17-19.)

6          Plaintiffs' "assertion that Defendants eavesdropped on
7  confidential counsel visits fails to state a claim because the
8  allegation 'that a party monitored the accused's conversations with
9  his attorney does not necessarily establish a Sixth Amendment
10  violation.  Rather, the accused must [allege], in addition, that the
11  substance of the overheard conversation was of some benefit to
12  enforcement officials.  Absent this [assertion], a monitoring
13  allegation must be denied.'"  (Nov. 22 Order at 6:12-16 (citing
14  <u>Mastrian v. McManus</u>, 554 F.2d 813, 821 (8th Cir. 1977); <u>see also</u>
15  <u>United States v. Hernandez</u>, 937 F.2d 1490, 1493 (9th Cir. 1991)
16  ("[T]he Supreme Court has twice held that government invasion of [the
17  attorney-client privilege] . . . is not sufficient by itself to cause
18  a Sixth Amendment violation.  The defendant must have been <u>prejudiced</u>
19  by some actions.  Our circuit has also explicitly held that prejudice
20  is required.")

21          Although Plaintiffs allege prosecutors received privileged
22  communications, they fail to state a claim because they do not allege
23  that "the information . . . was used against [them] in some way."
24  <u>Riddick v. Baker</u>, WL 221133, at *3 (E.D. Pa. April 28, 1997) (citing
25  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 555-57 (1977)); <u>see</u> SAC ¶ 25.
26  Therefore, Plaintiffs' allegations regarding handling of their legal
27  mail and eavesdropping on their counsel visits are dismissed with
28  leave to amend.

1  F. Jury Pool Claims

2          Defendants also move to dismiss Plaintiffs' allegations that

3  "various jury pools did not represent a fair cross-section of the

4  population of Butte County," arguing that under section 195 of the

5  California Code of Civil Procedure juries are selected by the Jury

6  Commissioner for the California Superior Court in Butte County;

7  therefore, "jury selection is not . . . within control of a County

8  [a]ctor." (Mot. at 7:28, 8:1, 3-13.)  Plaintiffs counter, without

9  citing any authority, by indicating that the Defendants are exposed to

10  liability for how jury pools are created.  (Opp'n at 10:5, 7-9.)

11          Section 195 of the California Code of Civil Procedure

12  prescribes that "[t]he jury commissioner shall be primarily

13  responsible for managing the jury system under the general supervision

14  of the court [and] shall have authority to establish policies and

15  procedures necessary to fulfill this responsibility."  Cal. Code of

16  Civ. P. § 195(c).  Section 195(a) further provides that "[i]n each

17  county, there shall be one jury commissioner who shall be appointed

18  by, and serve at the pleasure of, a majority of the judges of the

19  superior court."  (Id. at § 195(a).)  The statutory authority reveals

20  that the County is not responsible for the composition of the jury.

21  Accordingly, Plaintiffs' allegations of under-representation of

22  minorities on jury panels in paragraph 24 of the SAC are dismissed

23  without leave to amend.

24  II. ADA Claim

25          Defendants argue that Plaintiffs' ADA claim should be

26  dismissed because the SAC "alleges no facts that Plaintiffs were

27  denied accommodation or access 'by reason of' or 'because of' their

28  alleged disabilities." (Mot. at 9:28, 10:1-2.)  Plaintiffs argue that

15

they "have pled sufficient facts to support their allegations of violation of the letter and spirit of the ADA statute." (Opp'n at 11:12-13.)

Title II of the ADA prescribes:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Supreme Court has held that "[s]tate prisons fall squarely within the statutory definition of 'public entity,'" and thus the provisions of the ADA apply. <u>Pennsylvania Department of Corrections v. Yeskey</u>, 524 U.S. 206, 210 (1998). Accordingly, "programs or services provided at jails, prisons, and any other 'custodial or correctional institution'" come within the scope of the ADA. <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 691 (9th Cir. 2001). This includes "mental health services and other activities or services undertaken by law enforcement and provided by correctional facilities to those incarcerated . . . ." <u>Id.</u>

Plaintiffs allege that "McMurray had a shoulder and neck injury" and "needed a mattress which would support his injured neck" but that "[t]his accommodation was denied as all inmates must use the same thin mattress." (SAC ¶ 52.) Further, Plaintiffs allege that McMurray was also denied physical therapy, "access to diagnostic testing or follow up evaluations to determine whether his condition was deteriorating," and "evaluation services from any orthopedic surgeon." (<u>Id.</u> ¶¶ 52, 53.) Similarly, Plaintiffs allege that Mitchell had a serious heart condition but that it was not "treated or reasonably monitored" while he was incarcerated; that Collins "suffers

16

1  from Schnizophrenia" and in jail "he received no follow up evaluation

2  or treatment"; that "Haltiwanger was suffering from a mental

3  disability at the time of his arrest" and "was denied an appropriate

4  and timely mental status examination." (Id. ¶¶ 56, 57, 59.)

5         Plaintiffs also allege that they were "denied []

6  accommodation and/or access because of [their] disabilit[ies]." (SAC

7  ¶ 51.)  However, these allegations are conclusory since they do not

8  indicate that the denials of accommodation or access were because of

9  Plaintiffs' disabilities. (See id. ¶¶ 56, 57, 59.)  "The Court does

10 not accept as true unreasonable inferences or conclusory allegations

11 cast in the form of factual allegations." Manning v. City of Rohnert

12 Park, 2006 WL 3591149, at *3 (N.D. Cal. Dec. 11, 2006); see Miranda v.

13 Clark County, Nevada, 279 F.3d 1102, 1106 (9th Cir.2002) ("conclusory

14 allegations of law and unwarranted inferences will not defeat a motion

15 to dismiss for failure to state a claim.")  Accordingly, a claim is

16 not stated under the ADA because "plaintiff[s] [do] not allege that

17 [they] were denied [accommodation or access] because of [their]

18 disability." Mark v. Imberg, WL 1587797, at *10 (W.D. Wis. July 6,

19 2005).[2]  These allegations are dismissed with leave to amend.

20 III. IIED

21        McNelis moves for partial dismissal of Collins' IIED claim

22 asserting that he is immune from liability for allegedly providing

23 false testimony against Collins. (Mot. at 10:5-19.)  McNelis argues

24 that under California Government Code section 821.6, "police officers

25 ───────────────────

26        [2]  The discrimination requirement is explicitly stated in Title
   II: "no qualified individual with a disability shall, by reason of
27 such disability, be excluded from participation in or be denied the
   benefits of the services, programs, or activities of a public entity,
28 or be subjected to discrimination by any such entity." 42 U.S.C.
   § 12132 (emphasis added).

are immunized from suit for filing false police reports and providing

false statements pertinent to charges against defendants, even when

such statements are made in a malicious prosecution." (<u>Id.</u> at 10:10-

12.)  Plaintiffs' counter that "McNelis is not immune from inflicting

physical and mental damage to [] Collins."  (Opp'n at 11:19-20.)

Under California Government Code section 821.6, "[a] public

employee is not liable for injury caused by his instituting or

prosecuting any judicial or administrative proceeding within the scope

of his employment, even if he acts maliciously and without probable

cause."  Cal. Govt. Code § 821.6.  Police officers are public

employees within the meaning of section 821.6.  <u>Herve v. City and</u>

<u>County of San Francisco</u>, 2004 WL 2806165, at *7 (N.D. Cal. Dec. 7,

2004) (internal citations omitted).  Further, section 821.6 applies to

claims for IIED that are based upon malicious prosecution.  <u>See</u>

<u>Scannell v. County of Riverside</u>, 152 Cal. App. 3d 596, 609 (1984)

("[t]o allow an [IIED] cause of action [based upon conduct that falls

within section 821.6 to go forward] would permit . . . employee

immunity to be avoided simply by denominating the cause of action as

one for intentional infliction of emotional distress rather than

malicious prosecution."); <u>see also</u> <u>Herve</u>, 2004 WL 2806165, at *7

("[u]nder § 821.6, police officers' actions during an investigation

are 'cloaked with immunity,' even if they 'acted negligently,

maliciously, or without probable cause in carrying out their duties.")

Plaintiffs allege, *inter alia*, that Collins suffered "severe emotional

distress" because "[d]uring trial, Collins was subjected to the

contrived and false testimony of [] McNelis."  (SAC ¶ 64.)  Since

Plaintiffs' cannot state a claim for IIED claim based upon the

1  allegation that McNelis gave false testimony against Collins, this

2  allegation is dismissed without leave to amend.

3          Defendants also argue that Plaintiffs' IIED claim that

4  alleges that Plaintiffs' did not receive adequate medical care at the

5  jail should be dismissed because "the State and the Department of

6  Corrections, as public entities, [are] statutorily immune from

7  liability for prisoner[s'] claims for [IIED] and negligence arising

8  out of alleged medical malpractice and failure to furnish medical

9  care." (Mot. at 10:20-24.)  It is unclear whether Plaintiffs'

10  allegations include an IIED claim against the County.  (See SAC ¶¶ 62-

11  64 ("McNelis . . . committed the acts and omissions described

12  hereinabove [and] [t]he intentional and/or negligent acts of the

13  individual defendant[] was designed to cause . . . severe emotional

14  distress); but see Opp'n at 11:19-20, 12:6-8 (where Plaintiffs respond

15  to Defendants' argument concerning the lack of medical care even

16  though such conduct would be attributable to the County and not

17  McNelis.)  Nonetheless, under California Government Code section

18  845.6, "[n]either a public entity nor a public employee is liable for

19  injury proximately caused by the failure of the employee to furnish or

20  obtain medical care for a prisoner in his custody."  Cal. Govt. Code.

21  § 845.6.  Accordingly, to the extent that the IIED claim is based upon

22  the inadequate provision of medical care, it is dismissed without

23  leave to amend.

24                              CONCLUSION

25          For the stated reasons, the dismissal motion is granted in

26  part and denied in part.  Plaintiffs are granted leave to file a Third

27  Amended Complaint solely on the claims that have been dismissed with

28

1  leave to amend, provided that the Third Amended Complaint is filed

2  within ten days of the date on which this Order is filed.

3          IT IS SO ORDERED.

4  Dated:  April 10, 2007

5

6                              _____
                                GARLAND E. BURRELL, JR.

7                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28