1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VICTOR WYATT, MARSHALL K. McMURRAY, CHARLES MITCHELL, EDGAR M. COLLINS, and TERRANCE HALTIWANGER, | ) ) ) ) ) | 2:06-CV-1003 GEB-JFM |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER[*] |
| COUNTY OF BUTTE and DEPUTY PATRICK McNELLIS, | ) ) ) | |
| Defendants. | ) ) | |

19   Defendants move for summary judgment on Plaintiffs' 42

20 U.S.C. § 1983 and intentional infliction of emotional distress

21 ("IIED") claims, which are based on Plaintiffs' arrests and

22 incarceration in Butte County Jail.  Plaintiffs oppose the motion.

23                          BACKGROUND

24   Plaintiffs are Victor Wyatt ("Wyatt"), Marshall McMurray

25 ("McMurray"), Charles Mitchell ("Mitchell"), Edgar Collins ("Collins")

26 and Terrance Haltiwanger ("Haltiwanger") (collectively, "Plaintiffs").

27

28   [*]   This matter was determined to be suitable for decision without
oral argument.  L.R. 78-230(h).

1

Defendants are County of Butte ("the County") and Deputy Patrick McNellis ("McNellis") (collectively, "Defendants").

Several of Plaintiffs' claims were dismissed by this Court in an order issued April 11, 2007.  The claims that remain are: (1) Wyatt's claim against the County that his incompetency determination violated the Equal Protection Clause (Second Am. Compl. ¶ 19); (2) Wyatt's claim against the County that he was arrested in retaliation for filing a civil complaint (Id. ¶ 20); (3) McMurray's claim against the County that the Oroville Police Department violated his Fourth Amendment rights (Id. ¶ 34); (4) Mitchell's claim against the County that the Oroville Police Department used excessive force while arresting him (Id. ¶¶ 16, 36); (5) Collins's and Haltiwanger's claims against the County that they were denied telephone access while awaiting their state criminal trials (Id. ¶ 39); (6) Collins's claim against the County that the Oroville Police Department used excessive force while arresting him in 2004 (Id. ¶ 26); (7) Collins's claim against Defendants that McNellis used excessive force while arresting him in 2006 (Id. ¶¶ 26, 31-32); (8) Collins's claim against Defendants for IIED against McNellis relating to the 2006 arrest (Id. ¶ 63); (9) Plaintiffs' claims against the County that they received inadequate medical attention while incarcerated at Butte County Jail (Id. ¶¶ 26-28, 36, 40-41, 43); (10) Wyatt's claim against the County that a prison guard used excessive force while restraining him (Id. ¶ 43); (11) McMurray's claim against the County that a Consent Decree in place at Butte County Jail is unconstitutional (Id. ¶ 46); and (12) Plaintiffs' claim that the County has failed to train its correctional officers (Id. ¶ 47).

///

1                                DISCUSSION

2  I. Summary Judgment Standard

3          Summary judgment is appropriate if, when viewing the
4  evidence in the light most favorable to the non-moving party, there is
5  no genuine issue of material fact and the moving party is entitled to
6  judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lopez v. Smith,
7  203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  The moving party has
8  the burden of showing there is no genuine issue of material fact, and
9  "may discharge this burden by either submitting affirmative evidence
10 negating an essential element of the non-movant's claim," or "by
11 demonstrating that the nonmoving party's evidence itself is
12 insufficient to establish an essential element of its claim."  10A
13 Wright, Miller & Kane, Fed. Prac. & Proc. § 2727, at 471-72 (1998),
14 citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

15 II. Claims Against Non-County Actors

16         The County seeks summary judgment on Wyatt's Equal
17 Protection Clause claim, Wyatt's retaliatory arrest claim, McMurray's
18 Fourth Amendment claim, Mitchell's excessive force claim, and
19 Collins's excessive force claim concerning his 2004 arrest, arguing
20 that these claims are based on conduct not attributable to County
21 actors.  (Mot. at 11:20-12:24, 19:15-20, 22:15-20, 27:4-13.)

22         To state a § 1983 claim, the violation must have been
23 committed by a "person."  Cortez v. County of Los Angeles, 294 F.3d
24 1186, 1188 (9th Cir. 2002).  A county is a "person" under § 1983, but
25 a state and its officials are not, due to Eleventh Amendment sovereign
26 immunity.  Id.  Consequently, whether Plaintiffs may maintain a § 1983
27 claim against the County depends on whether the actor responsible for
28 the constitutional violation was a County actor.  See id.

1    A. Wyatt's Equal Protection Clause Claim

2           Wyatt alleges that a psychologist's determination that he
3    was incompetent to stand trial was a delay of trial tactic that
4    resulted in a violation of his Equal Protection Clause rights.  (SDUF
5    ¶ 71.)  Wyatt avers that while he was in Butte County Jail awaiting
6    trial for state criminal charges of domestic violence, his "court-
7    appointed attorney" said Wyatt "must be crazy to refuse" a plea he had
8    been offered, so he was examined by Dr. Paul Wuehler, a psychologist
9    in Marysville.  (Decl. Wyatt ¶ 6.)  Dr. Wuehler found Wyatt was not
10   competent to stand trial, which resulted in a delay of "many months"
11   while Wyatt waited for an opening in Napa State Hospital.  (Id. ¶¶ 6,
12   9.)  Once Wyatt was transferred to Napa State Hospital, the
13   psychologist there found Wyatt was not incompetent.  (Id. ¶ 9.)

14          The County has demonstrated that Wyatt's evidence is
15   insufficient to establish that any County actor was responsible for
16   intentionally causing a delay trial by having Wyatt found incompetent.
17   The only persons Wyatt alleges had any role in the event were his
18   public defender and Dr. Wuehler.  Wyatt presents no evidence that
19   either of these persons is a County actor.  See Polk County v. Dodson,
20   454 U.S. 312, 325 (1981) ("[A] public defender does not act under
21   color of state law when performing a lawyer's traditional functions as
22   counsel to a defendant in a criminal proceeding.").  Therefore, the
23   County's motion for summary judgment is granted on Wyatt's Equal
24   Protection Clause claim based on his incompetency hearing.

25    B. Wyatt's Retaliatory Arrest Claim

26          Wyatt alleges that he was arrested by the Chico City Police
27   for filing his civil rights complaint against the County.  (SDUF ¶
28   73.)  Since the Chico City Police Department is not a County actor,

the County is not liable on this claim under <u>Monell</u>.  Hence, the County's motion for summary judgment is granted as to Wyatt's retaliatory arrest claim against the County.

    <u>C. McMurray's Fourth Amendment Search and Seizure Claim,</u>
<u>Mitchell's Excessive Force Claim, and Collins's Excessive Force Claim</u>

       McMurray alleges that the Butte Interagency Narcotics Task Force violated his Fourth Amendment right against illegal search and seizure.[1]  (<u>Id.</u> ¶ 104.)  However, in his deposition, McMurray stated that the Oroville Police Department was responsible for the illegal search and seizure.  (Decl. Scott Cavanaugh in Supp. of Defs.' Mot. for Summ. J. ("Cavanaugh Decl."), Ex. D at 27:5-7.)  Mitchell alleges that two officers from the Oroville Police Department used excessive force while arresting him.  (SDUF ¶¶ 117-18.)  Collins alleges that the officers who arrested him in 2004 used excessive force.  (<u>Id.</u> ¶ 147.)  In his deposition, Collins states that the officers were from the Oroville Police Department.  (Cavanaugh Decl., Ex. I at 22:1-7.)

       Since the Oroville Police Department is not a County actor, the County is not liable on these claims under <u>Monell</u>.  Therefore, the County's motion for summary judgment is granted on McMurray's Fourth Amendment search and seizure claim, Mitchell's excessive force claim, and Collins's excessive force claim regarding his 2004 arrest.

///

///

///

---

    [1]  McMurray also alleges that his children's Fourth Amendment rights were violated.  However, his children are not plaintiffs in this action, and McMurray cannot assert violations of constitutional rights on their behalf.  <u>Rakas v. Illinois</u>, 439 U.S. 128, 133 (1978) ("Fourth Amendment rights are personal rights that may not be asserted vicariously.").

II. Claims Barred by the Heck Rule

    A. Collins's and Haltiwanger's Telephone Access Claims

        The County seeks summary judgment on Collins's and Haltiwanger's telephone access claims, arguing that the claims are barred by the Heck rule.  See Heck v. Humphries, 512 U.S. 477, 486 (1994).  (Mot. at 8:3-13; 9:25-4.)   Collins and Haltiwanger allege that lack of access to a telephone while they were pre-trial detainees in Butte County Jail impaired their ability to act in their own defense at their trials.  (SDUF ¶¶ 55, 67.)   Collins and Haltiwanger aver that "[a]t the jail there is only a monitored phone where inmates can call out collect," and that "[d]ue to [their] inability to use a telephone . . . privately, [Collins and Haltiwanger were] unable to talk to witnesses who would have aided in the presentation of [their] defense at trial."  (Haltiwanger Decl. ¶ 14; Collins Decl. ¶ 17.)

        Under Heck, a prisoner's civil rights suit is barred if it would necessarily imply the invalidity of the prisoner's conviction, unless the prisoner's conviction has been overturned or invalidated. 512 U.S. at 486.  Since lack of telephone access during and before trial implicates the Sixth Amendment right to counsel, these claims necessary imply the invalidity of Collins's and Haltiwanger's subsequent convictions, which have not been overturned or otherwise invalidated.  See Valdez v. Rosenbaum, 302 F.3d 1039, 1049 (9th Cir. 2002) (dismissing Sixth Amendment claim for lack of telephone access because the claim was barred under Heck).  Therefore, the County's motion for summary judgment is granted on Collins's and Haltiwanger's telephone access claims.

///

///

B. Collins's Excessive Force Claim for 2006 Arrest

Defendants seek summary judgment on Collins's excessive force claim involved with his 2006 arrest, arguing the claim is barred by the Heck rule.  (Mot. at 6:24-7:11.)  In 2006, Collins was convicted of a violation of California Penal Code section 148(a) for resisting, delaying or obstructing a police officer during his arrest by McNellis.  (SDUF ¶ 50.)  This conviction has not been invalidated.  (Id. ¶ 51.)

"A conviction for [violation of California Penal Code section 148(a) . . . may be lawfully obtained only if the officers do not use excessive force in the course of making that arrest."  Smith v. City of Hemet, 394 F.3d 689, 696 (9th Cir. 2005).  If Collins's excessive force claim is based on McNellis's conduct that occurred before Collins's resistance of the arrest, the claim would implicate the validity of the conviction and therefore would be barred under Heck.  See id.  However, Collins may maintain his excessive force claim "if the use of excessive force occurred subsequent to the conduct on which his conviction was based."  Id. at 698.

Defendants have demonstrated that Collins's evidence is insufficient to establish that the use of excessive force occurred after the arrest was made.  Collins's description of the incident in his deposition demonstrates that McNellis's conduct that is the basis for Collins's excessive force claim occurred during the arrest, not afterward.  (See Collins Depo. at 78:3-99:24.)  Likewise, Collins's declaration in opposition to the motion for summary judgment does not state that the excessive force occurred after the arrest.  (See Collins Decl. ¶¶ 2-4.)  Collins's conviction has not been invalidated.  (SDUF ¶ 51.)  Accordingly, since Collins's excessive force claim

necessarily implies the invalidity of his conviction under Penal Code section 148(a), Defendants' motion for summary judgment is granted on Collins's excessive force claim concerning his 2006 arrest.

C. Collins's IIED Claim

Defendants seek summary judgment on Collins's IIED claim, arguing that the claim is barred because it implies the validity of his conviction for resisting arrest. (Mot. at 7:13-23.) Collins's IIED claim is based on his arrest by McNellis in 2006. (Id. ¶ 54.) However, under California law, Collins may not maintain an IIED claim based on his arrest because he was convicted of resisting arrest and the IIED claim would implicate the lawfulness of the conviction. See Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412-13 (2002). "Permitting [Collins] to pursue state tort claims notwithstanding a conviction [for resisting arrest] would potentially allow him to profit by his own wrongdoing." Id. at 1412-13 (holding that state law tort claims, including IIED claim, were barred by California Penal Code section 148(a) conviction). Accordingly, since Collins's IIED claim necessarily implies the invalidity of his conviction under Penal Code section 148(a), Defendants' motion for summary judgment is granted on Collins's IIED claim.

III. Claims Barred by Failure to Exhaust Remedies

The County seeks summary judgment on Plaintiffs' claims that they received inadequate medical care while in Butte County Jail and Wyatt's claim for excessive force, arguing that Plaintiffs have not exhausted available administrative remedies. (Mot. at 32-33.)

Each Plaintiff alleges he received inadequate medical care while in the Butte County jail. (SDUF ¶¶ 74, 96, 120-21, 145, 166.) Wyatt also alleges that a guard in Butte County Jail used excessive

force in violation of the Fourth Amendment when the guard handcuffed him on July 23, 2006.  (Id. ¶ 80.)  Wyatt alleges that the guard "handcuffed [him] too tightly on purpose and pulled [him] by those cuffs in order to hurt [him].  [The guard] pushed [Wyatt's] face against the wall and kept [him] there uncomfortably unable to move and fearful for what might happen next."  (Wyatt Decl. ¶ 15.)

The Prison Litigation Reform Act of 1995 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Booth v. Churner, 532 U.S. 731, 736 (2001). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages.  Porter v. Nussle, 534 U.S. 516, 524 (2002); see Booth, 532 U.S. at 734, 741 (PLRA applied to § 1983 claim of inadequate medical care).

Defendants have demonstrated that Plaintiffs' evidence is insufficient to establish that any Plaintiff has exhausted administrative remedies concerning these claims.  (See SDUF ¶¶ 181, 185, 188, 191-92; Cavanaugh Decl., Ex. M.)  Plaintiffs argue that their grievances "went as far as jail staff allowed." (SDUF ¶¶ 185, 188, 191-92.)  However, no Plaintiff presents evidence showing any jail official interfered with the pursuit of an administrative grievance.  Moreover, Plaintiffs' mere argument that prison officials did not permit Plaintiffs to exhaust their administrative remedies is

an insufficient basis for denying summary judgment.  See Tovar v. U.S.
Postal Serv., 3 F.3d 1271, 1279 (9th Cir. 1993) ("[B]are assertions or
unsupported conclusions are not facts sufficient to support either a
summary or a post-trial judgment.").

Plaintiffs further argue that they did not receive (or could
not remember receiving) the Jail Information Handbook that describes
how to pursue an administrative remedy.  (Wyatt Decl. ¶ 2; Collins
Decl. ¶ 16; Haltiwanger Decl. ¶ 4; Mitchell Decl. ¶ 14; McMurray Decl.
¶ 2.)  However, the undisputed facts accompanying Defendants' motion
evince that each Plaintiff knew about the grievance procedure; and,
therefore, even assuming arguendo no handbooks were received, that
does not defeat Defendants' motion.  See Goebert v. Lee County, 2005
WL 3312333, at *5 (M.D. Fla. Dec. 7, 2005) (holding that because the
prisoner knew about the grievance procedure, it was immaterial that
the prisoner was not provided an inmate handbook).  (See SDUF 184,
187, 190, 191, 193.)

Finally, Plaintiffs argue that the grievance process was a
"sham exercise."  (Id. ¶ 189.)  However, "there is no 'futility
exception' to the PLRA exhaustion requirement."  Massey v. Wheeler,
221 F.3d 1030, 1034 (7th Cir. 2000) (dismissing prisoner's claim under
the PLRA despite prisoner's contention that administrative remedy
process was a "sham").

Accordingly, the County's motion for summary judgment is
granted on Plaintiffs' claim for inadequate medical care and on
Wyatt's claim for excessive force.

IV. McMurray's Consent Decree Claim

The County seeks summary judgment on McMurray's claim that a
Consent Decree in place at Butte County Jail is unconstitutional.

(Mot. at 20:3-21:4.)  McMurray alleges that the Consent Decree did not provide him with an adequate means for redress of his claims of denial of free exercise of religion and other alleged civil rights violations.  (SDUF ¶ 106.)  McMurray alleges that because the Consent Decree relates only to general jail conditions, and did not address civil rights issues, it is unconstitutional.  (Id. ¶ 110.)

        "The parties to a consent decree expect and achieve a continuing basis of jurisdiction to enforce the terms of the resolution of their case in the court entering the order."  Smyth ex re. Smyth v. Rivero, 282 F.3d 268, 279-80 (4th Cir. 2002).  The Consent Decree was not issued by this Court.  Where a claim attacks the validity of a consent decree entered by another court, the second court may "refuse entirely to entertain the action if relief in a more appropriate forum--the rendering court--were available."  Goulart v. United Airlines, Inc., 1994 WL 544476, at *3 (N.D. Cal. Sept. 28, 1994), quoting Treadaway v. Acad. of Motion Picture Arts & Scis., 783 F.2d 1418, 1422 (9th Cir. 1986).  This refusal is demanded by "considerations of comity and orderly administration of justice."  Treadaway, 783 F.2d at 1421 (upholding district court's refusal to set aside another court's final order).

        This Court will not intrude upon the continuing jurisdiction of the court that entered the Consent Decree.  Accordingly, this claim is dismissed.

        B. Failure to Train

        The County seeks summary judgment on Plaintiffs' claim that the County has failed to train its correctional officers, arguing that, under Monell, Plaintiffs have not presented evidence that the training is inadequate.  (Mot. at 32:9-21.)

There are "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 387 (1989).  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>Id.</u> at 389.

The County has shown it employs a trainer who trains County correctional officers who interact with inmates in appropriate state and local laws and regulations.  (SDUF ¶¶ 176-78.)  Defendants have demonstrated that Plaintiffs's evidence is insufficient to establish that the County's correctional officer training program is inadequate, let alone that it evidences a "deliberate indifference" to the rights of prisoners.  Accordingly, the County's motion for summary judgment on Plaintiffs' failure to train claim is granted.

CONCLUSION

For the reasons stated, Defendants' motion for summary judgment is granted on each of Plaintiffs' claims.  The Clerk shall enter judgment in favor of Defendants.

IT IS SO ORDERED.

Dated:  November 8, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge